UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Andrew D. Hertges,

                Plaintiff,

v.

Experian Information Solutions, Inc., and
Western Vista Federal Credit Union,

                Defendants.

Civ. No. 13-2699 (RHK/JJG)
**MEMORANDUM OPINION AND ORDER**

---

John H. Goolsby, Goolsby Law Office, LLC, Minneapolis, Minnesota, for Plaintiff.

Timothy D. Lervick, Crowley Fleck PLLP, Bismarck, North Dakota, for Defendant Western Vista Federal Credit Union.

---

## INTRODUCTION

In this action, Andrew Hertges has sued Experian Information Solutions, Inc. ("Experian") and Western Vista Federal Credit Union ("Western") for alleged violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq*. Presently before the Court is Western's Motion to Dismiss for lack of personal jurisdiction. For the reasons that follow, the Court will grant the Motion.

## BACKGROUND

Hertges is a Minnesota resident who previously lived in Wyoming. (Compl. ¶ 2; Leafgreen Aff. ¶ 6.) Sometime prior to 2009, while in Wyoming, he borrowed money from Western, a Wyoming credit union, using his vehicle as collateral for the loan.

(Compl. ¶¶ 7, 8; Leafgreen Aff. ¶¶ 2, 7.) He then moved to Minnesota and in 2009 experienced financial difficulties and fell behind on the payments. (Compl. ¶ 10; Hertges Aff. Ex. A.) He eventually went into default, and Western contracted with a Minnesota collection agency to recover the vehicle. (Hertges Aff. Ex. K.) The vehicle was later sold in Minnesota, but a deficiency balance remained. (Id. Ex. L.)

Hertges then set up a monthly payment plan with Western to satisfy the outstanding balance. (Compl. ¶ 14.) He alleges, however, that Western began incorrectly reporting the status of his account to Experian, a credit-reporting agency. (Id. ¶¶ 16-24.) In April 2013, he filed a dispute with Experian, which in turn contacted Western. (Id. ¶¶ 36-41.)[1] The inaccurate reporting continued, however. (Id.)

Hertges commenced this action against Experian and Western in October 2013, alleging that each had violated the FCRA. With respect to Western, the Complaint alleges that it "fail[ed] to conduct reasonable investigations" into Hertges's disputes, "fail[ed] to appropriately report the results of [its] investigations," and/or "fail[ed] to appropriately modify, delete, and/or block the [derogatory] information" reported to Experian. (Id. ¶ 60.) Contending that it has, at best, isolated contacts with Minnesota, Western now moves to dismiss for lack of personal jurisdiction.

## STANDARD OF REVIEW

In order to survive Western's Motion, Hertges need not establish jurisdiction by a preponderance of the evidence, but rather must make only a prima facie showing of

---

[1] Actually, Hertges is unsure whether Experian contacted Western, as he alleges in the alternative that it "failed to notify Western . . . of [his] April 2013 dispute." (Compl. ¶ 42.)

jurisdiction. E.g., Epps v. Stewart Info. Servs. Corp., 327 F.3d 642, 647 (8th Cir. 2003). This requires him to prove "sufficient facts . . . to support a reasonable inference that [Western] can be subjected to jurisdiction within [Minnesota]." Dairy Farmers of Am., Inc. v. Bassett & Walker Int'l, Inc., 702 F.3d 472, 475 (8th Cir. 2012) (citations omitted). Because Western controverts the existence of jurisdiction, Hertges's showing "must be tested[] not by the pleadings alone, but by the affidavits and exhibits presented with the motion[] and in opposition thereto." Id. (citations omitted). And where, as here, the Court does not hold a hearing, it must "look at the facts in the light most favorable to the nonmoving party, and resolve all factual conflicts in favor of that party.'" Pangaea, Inc. v. Flying Burrito LLC, 647 F.3d 741, 745 (8th Cir. 2011) (citation omitted).

## ANALYSIS

To establish a prima facie case of personal jurisdiction, Hertges must show (1) Minnesota's long-arm statute has been satisfied and (2) exercising jurisdiction would comport with the Due Process Clause of the Fourteenth Amendment.[2] E.g., Guinness Import Co. v. Mark VII Distribs., Inc., 153 F.3d 607, 613 (8th Cir. 1998); Minn. Mining & Mfg. Co. v. Nippon Carbide Indus. Co., 63 F.3d 694, 696-97 (8th Cir. 1995). These two inquiries collapse into one, however, because Minnesota's long-arm statute extends jurisdiction to the outer limits of the Due Process Clause. E.g., Guinness, 153 F.3d at 614; Soo Line R.R. Co. v. Hawker Siddeley Can., Inc., 950 F.2d 526, 528 (8th Cir. 1991) (citations omitted).

---

[2] For a cogent explanation why the Fourteenth Amendment, rather than the Fifth Amendment, applies in this federal-question case (through the back door of Federal Rule of Civil Procedure 4(k)), see Wallace v. Mathias, 864 F. Supp. 2d 826, 832-34 (D. Neb. 2012).

Due process requires that Western have sufficient "minimum contacts with [Minnesota] such that maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" Daimler AG v. Bauman, __ U.S. __, 134 S. Ct. 746, 754 (2014) (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)). "The central question" is whether Western "has purposefully availed itself of the privilege of conducting activities in [Minnesota] and should, therefore, reasonably anticipate being haled into court [here]." Pecoraro v. Sky Ranch for Boys, Inc., 340 F.3d 558, 562 (8th Cir. 2003) (citing Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985)). The Eighth Circuit has instructed district courts to consider five factors in answering this "central question": (1) the nature and quality of the defendant's contacts with the forum; (2) the quantity of those contacts; (3) the relation of the cause of action to the contacts;[3] (4) the forum state's interest in providing a forum for the plaintiff; and (5) the convenience of the parties. Id. (citation omitted). The first three factors are of primary importance, while the last two factors are considered secondary. Id.

**I.    Hertges has not established general jurisdiction.**

At the outset, the Court readily dispatches Hertges's argument that general jurisdiction exists over Western. This case simply does not involve a defendant with "continuous and systematic" Minnesota contacts. Indeed, it is undisputed that Western is

---

[3] This third factor distinguishes "specific" jurisdiction from "general" jurisdiction. Specific jurisdiction, the narrower of the two, exists over causes of action that arise out of a defendant's contacts with the forum state. Daimler AG, 134 S. Ct. at 754. General jurisdiction, by contrast, is broader, reaching any cause of action against a defendant when its contacts with the forum "are continuous and systematic." Id. (citation omitted). Here, Hertges argues that both specific and general jurisdiction exist over Western.

a Wyoming credit union without branches, employees, or offices in Minnesota. It is further undisputed that Western does not market to Minnesota citizens, owns no property here, and pays no taxes here. In fact, the only reason Minnesota is implicated in this action is because *Hertges* chose to move here. The nature, quantity, and quality of Western's contacts with Minnesota, therefore, are extremely minor. Pecoraro, 340 F.3d at 562 (citation omitted). The record simply does not support the notion that its limited Minnesota connections are sufficient to "render [it] essentially at home in [this] State." Daimler AG, 134 S. Ct. at 754 (citation omitted).

Hertges points to one so-called "continuous and systematic" contact between Western and Minnesota: a "Shared Branch" agreement pursuant to which Western customers can access their accounts through local credit unions nationwide, including in Minnesota. (Mem. in Opp'n at 10; Hertges Aff. Ex. J.) But this agreement, in the Court's view, will not suffice. It is well-established that entering into a contract with a Minnesota resident generally does not establish *specific* jurisdiction over a non-resident, let alone the far broader *general* jurisdiction. See, e.g., Viracon, Inc. v. J&L Curtain Wall LLC, 929 F. Supp. 2d 878, 883 (D. Minn. 2013) (Kyle, J.); S.B. Schmidt Paper Co. v. A to Z Paper Co., 452 N.W.2d 485, 487 (Minn. Ct. App. 1990) (long-arm jurisdiction "should not be such that anyone who deals with a Minnesota resident in any way . . . can be brought into the Minnesota courts to respond to a suit").[4] Moreover, the "Shared Branch" agreement gives Western customers access to their accounts through "hundreds

---

[4] As Minnesota's long-arm statute applies here, the Court must consider its interpretation by Minnesota state courts. See Myers v. Casino Queen, Inc., 689 F.3d 904, 909 (8th Cir. 2012).

of credit unions" nationwide (and worldwide). (Hertges Aff. Ex. H.) By Hertges's logic, therefore, the agreement would suffice to subject Western to jurisdiction in any of the fifty states in which one such credit union was located. In the Court's view, this is simply too thin a reed upon which to predicate so expansive a jurisdictional reach. See Viasystems, Inc. v. EBM-Papst St. Georgen GmbH & Co., 646 F.3d 589, 594-95 (8th Cir. 2011) (noting, because of its breadth, that general jurisdiction "is subject to a higher due-process threshold" than specific jurisdiction, and concluding no general jurisdiction existed over manufacturer that "pour[ed] its products" into area expecting substantial sales there).

**II.     Hertges has not established specific personal jurisdiction.**

Hertges also argues that the Court may exercise specific jurisdiction over Western. In support, he points to several Minnesota contacts purportedly related to this case: Western's use of a Minnesota collection agency; the recovery of the vehicle here; and the vehicle's subsequent sale in Minnesota. (Mem. in Opp'n at 9-10.) But he conflates facts regarding the *existence* and *collection* of the underlying debt with his claim against Western, which alleges the credit union violated the FCRA by "failing to conduct reasonable investigations" into his disputes, "failing to appropriately report the results of [the] investigations," and/or "failing to appropriately modify, delete, and/or block the [derogatory] information." (Compl. ¶ 60.) None of *these* allegations is alleged to involve Minnesota. There is no evidence or assertion, for example, that Western investigated Hertges's dispute here or reported derogatory credit information to Experian in Minnesota. See Goodyear Dunlop Tires Operations, S.A. v. Brown, __ U.S. __, 131 S.

Ct. 2846, 2851 (2011) ("Specific jurisdiction . . . depends on an affiliation between the forum *and the underlying controversy*.") (emphasis added) (internal quotation marks and alteration omitted); Paulucci v. William Morris Agency, Inc., 952 F. Supp. 1335, 1341 (D. Minn. 1997) (Magnuson, J.) ("For a court to assert specific jurisdiction over a nonresident defendant, a nexus must exist between the defendant's contacts with the forum and the subject matter of the claims."). And while he received, in Minnesota, several letters from Western regarding his disputes, it is well-established that "contact by . . . mail is insufficient to justify exercise of personal jurisdiction under the due process clause." Johnson v. Woodcock, 444 F.3d 953, 956 (8th Cir. 2003).

Perhaps realizing the limited nature of Western's Minnesota contacts, Hertges falls back on the "effects test" enunciated in Calder v. Jones, 465 U.S. 783 (1984). (Mem. in Opp'n at 7-9.) And he correctly notes that some federal courts have employed that test to find personal jurisdiction over a non-resident defendant in the state in which an FCRA plaintiff resided. See, e.g., Brewer v. Transunion, L.L.C., 453 F. Supp. 2d 1346, 1350-51 (S.D. Ala. 2006); Rivera v. Bank One, 145 F.R.D. 614, 622-23 (D.P.R. 1993).

But this is not a universally accepted proposition. See, e.g., Agbottah v. Orange Lake Country Club, Civ. A. No. 12-1019, 2012 WL 2679440, at *4-5 (D.N.J. July 6, 2012); Harris v. Trans Union, LLC, 197 F. Supp. 2d 200, 206-07 (E.D. Pa. 2002). And in this Court's view, these latter cases more closely comport with Calder's effects test. Under that test, "a defendant's tortious acts can serve as a source of personal jurisdiction . . . where the plaintiff makes a prima facie showing that the defendant's acts (1) were intentional, (2) were uniquely or expressly aimed at the forum state, and (3) caused harm,

-7-

the brunt of which was suffered – and which the defendant knew was likely to be suffered – [in the forum state]." Johnson v. Arden, 614 F.3d 785, 796 (8th Cir. 2010) (citation omitted). In other words, while Calder has been described as an "effects" test, "more than mere effects" supported that holding. Hicklin Eng'g, Inc. v. Aidco, Inc., 959 F.2d 738, 739 (8th Cir.1992) (*per curiam*).

To properly invoke Calder, therefore, a plaintiff must show the defendant's acts were "performed for the very purpose of having their consequences felt in the forum state." Dakota Indus., Inc. v. Dakota Sportswear, Inc., 946 F.2d 1384, 1390-91 (8th Cir. 1991) (citation omitted). The challenged conduct must be "uniquely aimed at the forum state," id. at 1391, which requires *more than the defendant's knowledge that a Minnesota plaintiff will suffer consequences from the conduct*. See, e.g., Viasystems, 646 F.3d at 594-95 (failure to pay in-state plaintiff "was not uniquely or expressly aimed at the forum state or performed for the very purpose of having [its] consequences felt in the forum state") (internal quotation marks and citations omitted); Superior Edge, Inc. v. Maricopa Cnty. Cmty. Coll. Dist., 509 F. Supp. 2d 786, 793-94 (D. Minn. 2007) (Ericksen, J.). This is all Hertges has proffered here. (Mem. in Opp'n at 9 ("Western Vista . . . knew Plaintiff lived in Minnesota . . . and should have anticipated its actions would be felt in Minnesota.").) Accordingly, he has not established a prima facie case of specific jurisdiction under Calder. Agbottah, 2012 WL 2679440, at *5 (no personal jurisdiction where FCRA plaintiffs "allege[d] only that they felt the effects of the tort in their home state, by nature of residing there, which is patently insufficient to invoke the 'effects test'").

**III.    Jurisdictional discovery is unwarranted.**

Finally, Hertges requests that the Court permit jurisdictional discovery if "the present record is somehow not sufficient to deny [Western's] Motion." (Mem. in Opp'n at 11-12.) But in the Court's view, jurisdictional discovery would be inappropriate under the circumstances here. This is not a case "in which certain facts necessary to resolving the jurisdictional inquiry are either unknown or disputed." Viasystems, 646 F.3d at 598. Rather, Hertges points to contacts the Court has already considered – Western's "contract with a Minnesota collection agency and its shared-branch arrangement with Minnesota credit unions" (Mem. in Opp'n at 11) – and determined that those contacts do not suffice. Additional discovery regarding those contacts, therefore, would do nothing to alter the Court's conclusion.

## CONCLUSION

Based on the foregoing, and all the files, records, and proceedings herein, it is **ORDERED** that Western's Motion to Dismiss for Lack of Jurisdiction (Doc. No. 12) is **GRANTED**, and Hertges's claim against Western (Count II of the Complaint) is **DISMISSED WITHOUT PREJUDICE**.

Date:  January 30, 2014

                                                  s/Richard H. Kyle
                                                  RICHARD H. KYLE
                                                  United States District Judge